## Jacks and others *v.* Nichols.

A resident of Savannah being in New York, with funds which he had just remitted from S. at an expense of nine per cent. for exchange, loaned the same in N., stipulating for seven and one-half per cent. of the exchange so paid by him, besides legal interest.—*Held,* that the transaction was usurious, and that a succession of notes given in renewal, were also void for usury ; and the last in the series were ordered to be delivered up and cancelled.

A prior remittance of the money loaned, from another state or country, not expressly for the purpose of the loan, furnishes no valid pretext to charge the borrower with the charges of such remittance, in addition to interest.

There is an intent to take unlawful interest, within the meaning of the statute, when more than seven per cent. is reserved, although the lender took the surplus under a mistaken idea that he had a right to charge the borrower for expenses or trouble.

The taking of a separate security for the interest and the excess, *does not aid* an usurious loan ; nor is it material, that no part of the unlawful interest was ever paid.

of Mary Green upon the bond and mortgage in question. After the usual directions for a sale of the mortgaged premises, to pay the whole debt and costs, the decree provided that the master should pay to the complainants their costs, and the sum reported due to them on the bond and mortgage, not exceeding however, two-thirds of the net proceeds of the sale ; and should pay the sum due to Mary Green's estate, (not exceeding the other third of such net proceeds,) to her executors or administrators, on their producing to him letters testamentary, or of administration on her estate, from the surrogate of the county of New York, and leaving with him a copy thereof, to be filed with his report. If no evidence should be produced to the master, on behalf of the legal representatives of Mary Green, to entitle him to pay them the proceeds of the sale as before directed, the master was required to bring into court and deposit with the clerk, the share of such proceeds belonging to her estate. In the event of a deficiency, an execution was to issue for the complainants, in behalf of themselves and Mary Green's legal representatives.

Jacks v. Nichols.

Where the last renewal of a series of usurious notes originating here, was made by the parties, residing in this state, signing the new notes and securities here, (the former being payable here,) and receiving here the notes given up, the contract is to be deemed as made here, and governed by our laws, although the new notes were delivered to the lender in another state, where he was temporarily residing.

*Semb.* the same law would govern, if the renewed notes had been made and delivered at the lender's residence abroad; there being no new loan, but simply a continuation of the original loan for a further period.

A creditor provided for in an assignment, is not a competent witness for the assignee in a suit to avoid a transfer of property made by the assignor.

December 13, 1845; February 25, 1846.

THE bill in this cause was filed, October 10th, 1844, by Pulaski Jacks and Hamlet Jacks, lately partners in New York, and by Jesse D. Price, as assignee under a general assignment for the benefit of creditors, against David B. Nichols, to compel the latter to deliver up to be cancelled, sundry promissory notes, alleged to be usurious, and to surrender the collateral security thereto.

The facts as shown by the pleadings and testimony, were as follows:

P. & H. Jacks were engaged in importing and manufacturing watches and jewelry. Nichols residing in Savannah, Georgia, was in New York on the first of June, 1840, and at that time, agreed to loan to P. & H. Jacks four or five thousand dollars, for which they agreed to pay him interest at seven per cent. per annum, five per cent. exchange, and two and one-half per cent. on sales of watch movements, imported by them, with the money loaned.

In pursuance of that agreement, Nichols, on the 1st of June, 1840, advanced to them $2000, and received their note for that sum, payable twelve months after date, and also their note for $240, payable nine months after date. Both notes were payable to, and indorsed by William H. Jaques. The $2000 was advanced in Nichols order on Young, Smith & Co., of New York.

On the 17th of June, 1840, Nichols advanced in a like order, to P. & H. Jacks, $1792 36, and took from them three notes, one for $1250, indorsed by George P. Shipman at twelve months,

one for $542 36, at twelve months, indorsed by Jesse D. Price, and one for $215 08, at six months, without indorsement.

P. & H. Jacks paid the notes for $240, and $215 08, respectively, when they became due; and on the 27th of May, 1841, they paid to Nichols $61 73, for commissions on their sales of watch movements.

The moneys advanced by Nichols in June, 1840, had been remitted by him from Savannah in March and April preceding, at which time exchange between New York and Savannah, was from six, to eight and one-fourth per cent. against the latter.

Nichols stated in his answer, that the agreement for the five per cent. and the commissions, was to cover a part of his expenses in procuring exchange and remitting his funds to New York, which had cost him nine per cent.

The principal loan was renewed in June, 1841, on the terms of the borrower's allowing two per cent. for difference of exchange between New York and Savannah, and interest at seven per cent. Accordingly, P. & H. Jacks gave new notes to Nichols in this city, viz.: a note dated June 1, 1841, at twelve months, for $2000, indorsed by S. Jacks and W. A. Woodruff; one dated June 19th, 1841, for $1000, at twelve months, indorsed by Price; and one for $792 36, of like date and tenor, indorsed by S. Jacks; and with the note of $2000, P. & H. Jacks gave their note of the same date to Nichols, at nine months, for $180, and with the two other renewed notes, gave him their cotemporary note at nine months, for $161 31. The notes of June, 1840, were thereupon given up to the makers.

Just before the renewed notes fell due, a renewal of the same was negotiated with Nichols, and agreed upon, on the terms next stated; and the new notes were signed here, and with the security stipulated, were sent and delivered to Nichols at Bridgeport, Connecticut, where he was then staying. Upon such renewal, P. & H. Jacks made three notes, viz.: one dated June 1, 1842, at six months, for $1000, indorsed by Price; and two dated June 18th, 1842, of which one for $792 36, at nine months, was indorsed by S. Jacks, and the other for $2000, at one year, was indorsed by S. Jacks and W. A. Woodruff; and for the interest on those notes, P. & H. Jacks gave their note to Nichols, dated

June 4th, 1842, at about four months, for $264 60. They also indorsed to Nichols, as collateral security for those notes, a note for $5300, made by Tyler & Jacks of New Orleans, to P. Jacks & Co., at two years, dated February 9th, 1842. Upon this being completed, the three principal notes of June, 1841, were delivered up to P. & H. Jacks, at New York.

The note of $1000, last mentioned, was renewed December 3, 1842, by a note of the same parties for $1006 33, payable at thirty days; and that note was renewed at thirty days for $1012 71, on the 5th day of January, 1843.

The bill charged that the indorsers had not been charged on any of the notes which were outstanding; but this was denied in the answer.

H. Jacks sold all his interest in the partnership of P. & H. Jacks, to P. Jacks in April, 1841; and on the 9th of May, 1843, the latter made an assignment of all his estate real and personal, including the note of Tyler and Jacks, to the complainant Jesse D. Price, in trust for the benefit of his creditors. By the assignment, W. A. Woodruff appeared to be a creditor of P. Jacks.

The bill prayed for an answer on oath; to have the outstanding notes of P. & H. Jacks declared void for usury and delivered up and cancelled, and to have the note of Tyler and Jacks restored to Price; and for an injunction in the meantime, restraining Nichols from parting with or collecting any of the notes.

The answer of Nichols stated the rate of exchange between New York and Savannah, and the expense of remitting his funds from the latter city; and that the allowances in 1840, in addition to the interest, were made to cover in part, that expense. He alleged that in 1841, he transmitted the whole loan then made (by renewing the notes,) from Savannah to New York, for the purpose, and actually paid three per cent. exchange thereon. And that he made the like transfer of funds in June, 1842, at an expense of two per cent. for exchange; and in the loan then made, he was allowed for his expenses of a journey to complete it, and one per cent. towards such exchange. He also insisted that the transactions in June, 1842, were all done at Bridgeport in Connecticut, and were not affected by the statute laws of this state.

The complainants introduced W. A. Woodruff as a witness. The defendant objected to him on the ground of interest, but his deposition was taken, and at the hearing the defendant moved that it be suppressed.

The cause was heard on the pleadings and proofs.

*J. M. Smith Jr.*, for the complainants,—cited 2 Cowen, 678. 709 ; 2 ibid. 769 ; 9 Mass. 55 ; 3 Bos. & P. 159 ; 5 Rand. 406 ; 13 Wend. 505 ; 2 Peters 327 ; 3 Halsted, 233 ; 9 Cowen 65.

*B. W. Bonney*, for the defendant, cited 23 Wend. 79 ; 6 Hill, 223 ; 9 Peters, 378 ; 19 Johns. 496 ; 4 Hill, 224 ; 4 ibid. 211, 219 ; 2 ibid. 635 ; 1 ibid. 227 ; 10 Paige, 94 ; 10 ibid. 109 ; 7 ibid. 581 ; 10 ibid. 326 ; 9 ibid. 478 ; Story's, Confl. of Laws, 201, s. 242 ; Ibid. 527, s. 637, 638 ; Cowen & Hill's Notes to Phill. Ev. 1136 to 1140 ; 8 Johns. 146, 189 ; 1 Paige, 220 ; 7 ibid. 615 ; 3 Dana, 495.

THE ASSISTANT VICE-CHANCELLOR.—The defendant's motion to suppress the testimony of William A. Woodruff, must be granted with costs. The assignee is prosecuting this suit for the recovery of the note of $5300, made by Tyler & Jacks, and if he succeed, the fund in his hands will be increased accordingly. Woodruff is a creditor, whose debt is to be paid out of the assignment. His debtor is insolvent, and although he is a preferred creditor, there is no evidence that his debt will be paid without the aid of the note of Tyler & Jacks. He is therefore directly interested in the event of the suit ; independent of the consideration, that he is an indorser of one of the notes which the bill impeaches as usurious.

The case itself is one of unmitigated usury. The loan was made in this city, in 1840, and the borrowers agreed to pay Mr. Nichols, for the use of the money, seven per cent. interest, five per cent. more under the denomination of "the exchange from Savannah," and two and a half per cent. upon all sales of watch movements made by them.

The money loaned was here. True it had been remitted to

this city, from Savannah in Georgia some time before, and upon this fact the defence is founded. It is said that the charge of five per cent. was for "*fixing out the fund*," by transferring it from Georgia, in order to make the loan, exchange on New York at Savannah, being at the rate of nine per cent. premium ; and that the legality of the charge is sustained by the decision of the Chancellor, and the supreme court in *Suydam* v. *Bartle*, (10 Paige, 94,) and *Suydam* v. *Westfall*, (4 Hill, 211, 219.)

If it were material, I suppose it would be my duty to take notice of the fact as matter of history, that in 1840, the great price which exchange upon this city bore in Georgia, was occasioned by the refusal of the banks in that state, to redeem their circulation in specie. The funds paid there for the exchange, were irredeemable bank notes, which were at a discount of several per cent. from the specie standard. The funds payable here on the bills of exchange, were equivalent to specie. If Mr. Nichols had offered gold or silver in Savannah, for a bill of exchange on New York, he would undoubtedly have had it furnished to him at half the rate per cent. which P. and H. Jacks agreed to pay him for the use of his money, under the name of exchange from Savannah. Therefore if he had actually remitted the sums loaned from Savannah, in order to furnish it to P. and H. Jacks, it would not relieve him within the decisions to which his counsel referred.

But there is no foundation whatever for the charge of any exchange. Not only was the money already here, but it had been sent here without the slightest reference to this loan. The circumstance that it had come here from Savannah, made it worth no more to the borrowers. Even if it had cost the defendant twenty per cent. to bring it here, it would buy for him no more property after it arrived ; nor did our statute permit him for that cause to loan it at a greater profit than seven per cent.

As well might a merchant who had brought Mexican dollars from the interior of Mexico, at an expense of ten per cent. paid for insurance, freight and protection from robbers, insist on loaning them here, that the borrower should pay him those expenses in addition to the interest.

The case cited from 2 Hill, 635, (*Cayuga County Bank* v.

*Hunt,*) is not applicable. There the borrower from a country bank, wanting to use the loan in this city, instead of taking the notes of the bank which were equal to specie at its counter, or taking specie and remitting it, received from the bank a draft at sight on New York, for which he paid three fourths of one per cent. If he had brought the bank notes to New York, he would have been obliged to sell them at a discount equal to what he paid for the draft, and the transmission of specie would have been nearly or quite as expensive. The decision there was that the sale of the exchange was a distinct transaction from the loan, and of itself fair and reasonable.

The case is not aided by the giving of separate notes for the use of the money. It is one contract, and all the securities alike infected. Nor is it material, to show that any illegal interest was actually paid. The agreement to pay it is enough. It is admitted however, that the two first notes given for the interest and exchange were paid.

It is true that there must be an intent to reserve or take more than seven per cent. In this instance the lender reserved twelve per cent. for the use of his money, and he intended to obtain it. The statute declares that to be usury, however ignorant he may have been of its provisions, or deceived by the use of the word *exchange.*

There is no escape from the conclusion that the notes given in June, 1840, were usurious and void. The securities now in existence are mere renewals of the original notes, and equally void, and the transfer of Tyler & Jacks note, is also invalid; unless the latter, together with the renewals in June, 1842, are new contracts, made in another state, the laws of which are not proved.

The notes of that date were made in this city, and sent from here to the defendant at Bridgeport, in Connecticut. The renewal had been negotiated previously, but it does not appear at what place this occurred. The answer states that the defendant was then staying at Bridgeport, and it is particular to state that the new notes were received, and the notes of 1841, delivered up, at that place ; but it does not allege that the negotiation for the renewal was at Bridgeport. If the defendant relied upon a change

in the *lex loci*, to affect the continuity of this usury, he should have made the point clear beyond a doubt. As it stands, the original transaction was here, the renewal in 1841, was here; the notes in 1842, were made and executed here; and they were payable here, because it was necessary to demand them of the makers, in order to charge the indorsers. I do not think that their delivery to the defendant in another state, where he was abiding temporarily, affects the law of the contract. But if the negotiation had been made, and the new notes signed and delivered in Bridgeport, it would not in my view have altered the case in the least. It was simply a continuation of the original loan, for a longer period. Whether new securities were taken, or a covenant executed to give forbearance on the old securities, the substance of the thing is the same. There was no new loan; no new consideration, save the forbearance, and for that interest was to be paid. When these new notes are brought before the courts of this state, and it is made to appear that they were renewals of securities, executed in New York, and void for usury, or were given in consideration of such securities; I apprehend that we have no alternative but to hold them void on account of the original taint; whether the new notes were executed here, or in one of the neighboring states.

The complainants are entitled to the relief prayed for in their bill.

Decree accordingly.